Filed 3/9/16  P. v. Morales CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E058677 |
| v. | (Super.Ct.No. RIF081595) |
| JOSE LUIS MORALES, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Christian F. Thierbach, Judge.  Affirmed.

Marilee Marshall, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Joy Utomi, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Jose Luis Morales appeals from an order denying his motion to vacate and/or withdraw his plea. We find no error and affirm.

I

STATEMENT OF THE CASE

On May 9, 1998, two groups of youths were "tagging" in a storm drain. The victim offered to sell defendant—a member of the other group—some marijuana, but defendant declined. Instead, he decided to take the marijuana from the victim by armed force.[1]

Defendant and one of his companions approached the victim and inquired about the marijuana. Defendant then pointed his handgun (a 38-caliber revolver) at the victim and demanded the marijuana. When the victim refused, defendant fired a warning shot in the air and told the victim that if he did not comply by the count of three, defendant would kill him. The victim defied defendant and defendant shot him several times. He then pointed the gun at two of the victim's companions and appeared to attempt to fire it, but it did not discharge.

Although our record does not include an information, the felony complaint filed July 16, 1998, charged defendant with special circumstances murder (Pen. Code, § 190.2, subd. (a)(17)(A)[2] [in the course of robbery]) as well as personally discharging a firearm

---

[1] Our statement of the facts of the case comes from the preliminary hearing transcript and primarily reflects admissions and statements made by defendant himself to investigators.

[2] All subsequent statutory references are to the Penal Code.

causing great bodily injury (§ 12022.53, subd. (d)). Defendant was also charged with two counts of assault with a firearm with respect to having pointed his gun at the victim's friends. (§ 245, subd. (a)(2).) It is apparent that all of these charges were amply supported by the evidence at the preliminary hearing.

On August 12, 1999, defendant entered a plea of guilty to first degree murder and admitted an enhancement under section 12022.5, subdivision (a)(1).[3] The agreed term was 29 years to life. The felony plea form does not contain an interpreter's statement—that is, there is a space for such a statement of translation, but it is blank. The form also included the information that "If I am not a citizen of the United States, I understand that this conviction may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." Defendant initialed this space.

At the time of the plea, the trial court discussed with defendant the advantages of the plea, which allowed him to avoid the very real possibility of a sentence of life without possibility of parole. He then explained what the agreed sentence meant in terms of the time defendant would spend in prison and the factors which would bear on his chances for eventual release on parole.

This colloquy was conducted in English and defendant consistently responded appropriately with "Yes, Your Honor," "Yes, sir," "No, sir," and the like. Similar

---

[3] The original designation of section 12022.53 was in error as the numbering had been changed.

3

appropriate responses were made during the actual taking of the plea; for example, when asked "how do you plead, sir?" defendant responded "Guilty, Your Honor." Counsel joined in the plea after confirming to the court that he was satisfied that it was in his client's best interest.

It did not take long for the enormity of his situation to sink in on defendant, however, and in November of the same year, and prior to sentencing, defendant, represented by new counsel, filed a motion to withdraw his plea. This motion was supported only by the declaration of counsel, who stated on information and belief that at the time of the plea defendant was fatigued, under "emotional duress," and depressed. Counsel also complained further that no Spanish interpreter was employed during the proceedings.

At the hearing on this motion, defendant was assisted by an interpreter. Defendant's original attorney testified that all of his discussions with defendant were conducted in English and that defendant did not appear to have difficulty with the language. He testified that the issue of communicating in Spanish never came up.[4] Counsel also told the court that his review of defendant's interviews with law enforcement personnel did not raise any concerns whatsoever about defendant's English fluency or comprehension. His last word was an emphatic "There was absolutely no

---

[4] When defendant was asked if he would waive the attorney-client privilege so that his previous attorney could testify, he evidently responded in Spanish. The trial court observed drily "It's the first time I have heard Mr. Morales say 'Si, Senor. . . .' It's interesting."

reason for me to think that there was any problem with respect to Mr. Morales understanding me."

This motion was denied. The trial court went so far as to call the motion an apparent "fraud."

The next relevant filing[5] by defendant occurred on April 15, 2013, when he filed the motion involved in the current case, another motion to vacate the judgment but based upon the requirement of section 1016.5 that defendants entering pleas of guilty must be advised of the potential immigration consequences of that decision. In this motion defendant asserted that he was "[r]ecently" notified that federal officials had a "hold" on him, and had been asked if he "would like to be deported to complete the sentence in Mexico." Defendant asserted that he had been in the United States since he was a month old and would never have entered his plea had he known that he would be deported.[6]

The motion was denied without additional proceedings. Defendant appeals.

II

DISCUSSION

---

[5] In the interim, defendant had made repeated challenges to the restitution fine imposed at sentencing.

[6] Defendant attached a Judicial Council habeas corpus form (Judicial Council Forms, form MC-275) which also raised issues of ineffective assistance of counsel, such as counsel's failure to discover that he was not a citizen and that he was "mentally ill" due to childhood trauma. These claims are not raised here.

If a defendant establishes (1) that the advisements required by section 1016.5 were not given, (2) that he or she is in fact subject to adverse immigration action, and (3) that he or she would not have entered the plea if the advisements had been given, section 1016.5 requires the court to permit withdrawal of the plea. (*People v. Arriaga* (2014) 58 Cal.4th 950, 957-958.) We review for abuse of discretion. (*People v. Limon* (2009) 179 Cal.App.4th 1514, 1517.)

As we have noted above, although the trial court did not refer to immigration consequences when it actually took the plea, the plea form signed by defendant *did* contain the required warnings, and defendant, by initialing the appropriate box, indicated that he understood that it might apply to him. Such a written provision of the advisements through a plea form is permissible. (*People v. Ramirez* (1999) 71 Cal.App.4th 519, 522.) Hence, defendant's basic premise clearly fails.

However, in his opening brief defendant (implicitly conceding that advisements *were* given) argues that he was inadequately advised *in Spanish* of the immigration consequences—that he needed an interpreter to understand the plea form.

The only reference to this specific issue in the motion actually filed by defendant in the trial court came in the context of defendant's complaint that his attorney(s) did not investigate his mental state and/or the ineffectiveness of previous counsel: "petitioner appeared with Aguilar [attorney number two] for the hearings where *the only allegations made on petitioner's behalf* were that Fait [attorney number one] had pressured petitioner to accept the plea *and that Fait never acquired an interpreter for petitioner for any of the*

*proceedings . . . .*" (Italics added.) We observe that this is *not* a claim that defendant did not understand the advisements given or provided in English.**7**

In fact we appreciate defendant's evident personal recognition of the fact that his 1999 motion to withdraw his plea was meretricious, and we have no difficulty in rejecting the attempt by appellate counsel to revive it. There is *no* evidence attached to the current motion to vacate which tends to establish that defendant was not competent in English at the time of his plea. In fact, there was virtually no such evidence in the record at the time of the 1999 motion to withdraw the plea and ample affirmative evidence that he *was* fluent in English. Defendant did not establish that the advisements were inadequate for linguistic reasons.

Defendant then relies on the assertion that he did not believe that the advisements applied to him. We note that defendant, in the motion he prepared, stated that he had lived in the United States since he was a month old. Nothing suggests that he believed he was born in this country or that he was a citizen not subject to deportation. In any event relief under section 1016.5 is tied to whether the proper information was provided, not whether the defendant correctly analyzes it.**8** (Cf. *In re Resendiz* (2001) 25 Cal.4th 230,

---

**7** Indeed, the motion filed in the superior court sub silentio *abandons* any such claim because defendant repeatedly stresses that he informed his attorneys of certain facts and "explained" certain matters to them which they should have, but did not, investigate. Hence, he implicitly concedes that he was able to communicate with counsel in English.

**8** We note that nothing in the record indicates that defendant asked trial counsel about his immigration status, or that trial counsel was aware that he was not a native citizen. We express no view on what effect these factors might have in a proper case.

250 [defendant informed counsel that he was not a citizen and affirmatively asked about immigration consequences, receiving bad advice].)

We also briefly note that although the People were not asked to respond to the motion below and accordingly did not have the opportunity to rebut defendant's "had I but known" claim, such a claim, if tested, would almost surely fail. Defendant's deportability depends on the fact that he was convicted of an "aggravated felony," which under federal immigration law includes any "crime of violence," further defined as the use of physical force against the person or property of another. (18 U.S.C. § 16(a), 8 U.S.C. §§ 1101(a)(43)(F) & 1227(a)(2)(A)(iii).) There is really no scenario under which defendant would not have been convicted of such an offense had he gone to trial. (By the time of his effort to withdraw his plea in the trial court, his codefendant had been convicted of first degree murder although he was not the actual shooter.) The most detailed and specific advice which defendant could have received was "You have the choice of having a chance for parole which very well might be in Mexico,[9] or staying in the United States for the rest of your life . . . in prison." We expect that defendant would have chosen the former.

---

[9] Counsel could reasonably have also commented that by the time defendant was eligible for parole in the fairly distant future, immigration laws might have changed.

III

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER

J.

We concur:

RAMIREZ

P. J.

MILLER

J.